FILED
Mar 06, 2026
12:51 PM(CT)
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



# TENNESSEE BUREAU OF WORKERS' COMPENSATION CLAIMS
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MURFREESBORO

| | | |
|---|---|---|
| **ERIC KUMAH,** | ) | **Docket No. 2025-50-3868** |
| **Employee,** | ) | |
| **v.** | ) | |
| | ) | |
| **CST SMYRNA,** | ) | **State File No. 75574-2022** |
| **Employer,** | ) | |
| **And** | ) | |
| | ) | |
| **ZURICH AM. INS. CO.,** | ) | **Judge Dale Tipps** |
| **Insurance Carrier.** | ) | |

---

## EXPEDITED HEARING ORDER GRANTING BENEFITS

---

The Court held an Expedited Hearing on February 25, 2026. The sole issue was whether Mr. Kumah is likely to prove at trial that he is entitled to additional temporary disability benefits.[1] For the reasons below, the Court finds he is likely to prevail at a hearing on the merits that he is entitled to temporary total disability benefits beginning on October 13, 2025, but not the temporary partial disability benefits requested before that date.

### History of Claim

Mr. Kumah injured his back while working for CST, a temporary staffing agency, on September 29, 2022. At the time, he was assigned to work for Quanta, a computer manufacturer. CST furnished medical care, including a panel, from which

---

[1] Mr. Kumah initially sought to prove that CST unreasonably delayed his medical treatment. However, although he was a credible witness, he was a poor historian and had difficulty remembering the sequence of his requests for treatment and the treatment itself. Thus, his attorney stated during closing arguments that his current request for relief was limited to temporary disability benefits.

Mr. Kumah selected Dr. Tarek Elalayli, a spine specialist.

Dr. Elalayli first saw Mr. Kumah in December and diagnosed lumbar radiculopathy and lumbar stenosis. He ordered an epidural steroid injection, prescribed medication, and assigned a lifting restriction.

After several months of treatment, including more injections, Mr. Kumah reported no improvement, with significant pain that worsened with prolonged standing. He had numbness in both legs and needed a cane to walk. However, because he was "not interested in any type of surgery," Dr. Elalayli determined that he was at maximum medical improvement and assigned a permanent impairment rating on July 12, 2023.

Over the next year, Mr. Kumah continued seeing Dr. Elalayli, who released him to regular duty on February 19, 2024. On July 18, Mr. Kumah was still not interested in surgery, so the doctor referred him to pain management.

Mr. Kumah began pain management treatment with Dr. Son Le on September 12, 2024.[2] Dr. Le prescribed an opioid and began seeing him monthly, occasionally ordering epidural steroid injections. In February 2025, he suggested an implant as a more permanent solution. That recommendation was denied by utilization review because of the lack of a lumbar MRI and a neurosurgical consultation, so Dr. Le ordered both.

The neurosurgery consultation took place on July 2 with Dr. Douglas Matthews. He assessed congenital and degenerative lumbar stenosis with a herniated L4-5 disc and agreed with Dr. Elalayli's surgical recommendations.

Mr. Kumah returned to Dr. Le in August and told him he was "planning for upcoming lumbar surgery as recommended by Dr. Matthews." Dr. Le last saw him in September, and his office note states that surgery had not been approved, although Mr. Kumah had actually not yet returned to Dr. Elalayli.

On October 13, Mr. Kumah saw Dr. Elalayli, who ordered an L-4 laminectomy and bilateral L4-5 discectomy. The doctor also wrote that he was unable to work. A few days later, Dr. Elalayli answered a questionnaire from Mr. Kumah's attorney, in which he answered "yes" to the question, "Because Mr.

_____

[2] Dr. Elalayli referred him to Dr. Jeffrey Hazlewood. The parties offered no proof as to why he saw Dr. Le instead.

Kumah now wishes to proceed with surgery, do you agree that he is no longer at maximum medical improvement?"

Dr. Elalayli performed the surgery on December 30. His January 2026 note said that Mr. Kumah was doing well but was still temporarily unable to work.

Regarding temporary disability benefits, Mr. Kumah said that CST offered light duty based on Dr. Elalayli's December 2023 restrictions. However, he declined the offer, to leave the country to attend his father's funeral. As a result, CST terminated his temporary disability benefits. When he came home to Tennessee a month later, he called the local CST office and spoke to someone named Erica. He asked her about returning to work but never received another light-duty offer.

Mr. Kumah said he was unable to work in 2023. He worked for other employers in 2024, but his injury made work difficult, and he was unable to keep those jobs for very long. He did not work at all in 2025.

Christy Najar, the workers' compensation manager for CST, explained the company's light-duty program. Since it is a temporary staffing agency, the first step is to try to place an injured worker back with the same client where they were working when the injury occurred. If that client cannot accommodate the worker's restrictions, CST uses a third-party vendor to identify transitional modified-work assignments elsewhere, usually at a nonprofit organization.

In Mr. Kumah's case, Quanta could not accommodate his restrictions, so Ms. Najar emailed him a letter on January 23, 2023, offering him transitional work at a thrift center beginning on January 30. The adjuster for the carrier, Melissa Frazzitta, emailed him the same letter the next day. Mr. Kumah promptly answered Ms. Frazzitta that he had just been informed of his father's death and had to be out of the country for a while.

Mr. Kumah responded to Ms. Najar's email on February 24. He acknowledged that the doctor had released him to light-duty work. However, Mr. Kumah did not accept the assignment, adding, "I can't even take my son to the school bus stop." He said he would update her after his scheduled injection on the 27th.

Ms. Najar testified that Mr. Kumah never contacted her again, and she was not aware of him requesting light duty from anyone in the local office. If he had asked to return, CST would have continued to try to place him in a light-duty assignment, but she could not guarantee he would have been accommodated.

CST paid no additional temporary disability benefits until Dr. Elalayli recommended surgery and took Mr. Kumah off work again in October 2025. However, even though it ostensibly resumed temporary total disability payments at that time, Mr. Kumah said he only received three checks, all on November 23. He has not received any payment since, but he recently gave CST his banking information so they could pay by direct deposit.

Mr. Kumah contended that he was entitled to temporary total disability benefits from January 31, 2023, through December 2023. Because he worked during 2024, he would need to develop more proof regarding temporary partial disability benefits, so he did not request benefits for that year at this time. However, because he did not work in 2025, he requested temporary total disability benefits from January 2025 until Dr. Elalayli took him off work on October 13.

Finally, although CST agreed that Mr. Kumah was entitled to temporary total disability benefits beginning on October 13, 2025, he requested an order for those payments, given CST's repeated failure to timely pay them.

CST argued that, other than the current benefits beginning in October 2025, Mr. Kumah was not entitled to any additional temporary disability benefits. First, it contended that it would have returned him to light duty if he had ever notified Ms. Najar or Ms. Frazzitta of his willingness to come back. Second, because Dr. Elalayli said Mr. Kumah reached maximum medical improvement on July 12, 2023, no temporary disability benefits were due after that date.

**Findings of Fact and Conclusions of Law**

Mr. Kumah must show he is likely to prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(c)(6) (2025); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

Mr. Kumah's request for temporary total disability benefits is erroneous, as an injured worker is eligible for those benefits only when he is completely unable to work. *Jones v. Crencor Leasing and Sales*, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7-8 (Dec. 11, 2015). Mr. Kumah was not taken off work completely during the relevant time period but was on light-duty restrictions. Thus, the appropriate question in this case is whether he is entitled to temporary partial disability benefits. For this, he must show that his treating physician returned him to work with restrictions that CST either could not or would not accommodate. *Id.*

The first hurdle Mr. Kumah must clear is that a worker's entitlement to temporary partial disability benefits ends once the employee is able to return to work or has reached maximum medical improvement. *Hackney v. Integrity Staffing Solutions, Inc.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 29, at *11 (July 22, 2016).

According to Dr. Elalayli, Mr. Kumah reached maximum medical recovery on July 12, 2023. Normally, this would mean he could not receive temporary disability benefits after that date. In this case, however, he returned to Dr. Elalayli in October 2025 for the operation, the doctor took him completely off work, and the parties agreed that Mr. Kumah is entitled to a resumption of temporary total disability benefits.

But what about the period between July 12, 2023, and October 13, 2025? The rule in *Williams v. Saturn Corp.,* No. M2004-01215-WC-R3-CV, 2005 Tenn. LEXIS 1032, at *8 (Tenn. Workers' Comp. Panel Nov. 15, 2005), does not appear to be without exception. If a maximum medical improvement determination is "premature and incorrect," temporary disability benefits may still be awarded. *Mansell v. Southeast Personnel Leasing, Inc.*, 2025 TN Wrk. Comp. App. Bd. LEXIS 9, at *11 (Mar. 12, 2025). However, an employee "still must show that he would likely prevail at trial in proving that the original [maximum medical improvement] determination was premature." *Id.*[3]

The Supreme Court Workers' Compensation Panel held that the initial maximum improvement determination was premature and incorrect when an MRI, approximately one year later, revealed the need for additional surgery. *Wise v. Murfreesboro Health Care Ctr.*, no number in original, 1994 Tenn. LEXIS 389, at *9 (Tenn. Workers' Comp. Panel Dec. 22, 1994). Similarly, the Board recently held that additional temporary benefits were proper when an employee experienced additional symptoms after reaching maximum improvement, an MRI revealed severe post-traumatic arthritis, and the doctor retracted his opinion. *Laymance v. K-VA-T Food Stores, Inc.*, 2026 TN Wrk. Comp. App. Bd. LEXIS 2, at *12 (Jan. 14, 2026).

*Wise* and *Laymance* are distinguishable from this case. Unlike the employees

---

[3] The Court was unable to identify any specific authority on this question as to temporary partial disability benefits. *Mansell* and the other cases cited addressed temporary total disability rather than partial. However, both partial and total disability benefits share the limitation of maximum medical improvement terminating the right to benefits. Thus, the analysis is the same, and the Court views these cases as controlling authority.

in those cases, Mr. Kumah offered no evidence that his symptoms or his underlying medical condition changed after Dr. Elalayli said he reached maximum medical improvement.

Instead, like the employee in *Mansell*, Mr. Kumah offered no expert proof that Dr. Elalayli "placed him at [maximum medical improvement] prematurely or that he has retracted that determination or otherwise reversed his opinion." 2025 TN Wrk. Comp. App. Bd. LEXIS 9 at *11. The doctor's response to the questionnaire does not constitute an opinion that he retracted or reversed his previous opinion, that Mr. Kumah's underlying condition had changed, or that he was not at maximum improvement before October 2025. Instead, it only established that Mr. Kumah was no longer at maximum medical improvement once he agreed to accept the offered treatment.

Like the *Mansell* court, this Court cannot find that the doctor's original determination was premature or medically incorrect without any expert medical opinion to support that conclusion. That kind of speculation is improper, as courts cannot formulate their own medical opinions. *Id*. For this reason, Mr. Kumah has not yet shown he is likely to prove entitlement to temporary partial disability benefits between July 12, 2023, and October 13, 2025. [4]

This leaves the period between the termination of temporary total disability benefits at the end of January 2023, and July 12, 2023, when Dr. Elalayli concluded that Mr. Kumah had reached maximum medical improvement. The question is whether CST either could not or would not accommodate his restrictions.

When the doctor first assigned restrictions, CST offered Mr. Kumah light-duty work, to begin on January 30. He received this offer from both Ms. Najar and Ms. Frazzitta. He did not accept the assignment, explaining to Ms. Frazzitta that he had to leave the country to attend his father's funeral. After his return to Tennessee, Mr. Kumah again declined the offer, this time contacting Ms. Najar and implying he was unable to physically perform any work. He then said he would update her after his next injection on "the 27th." Assuming Mr. Kumah was referring to a medical appointment on February 27 (no medical record for that day was offered), he would not be entitled to temporary partial disability benefits for February 2023, because he

---

[4] This conclusion obviates the need to address the questions raised by Mr. Kumah's refusal of the recommended surgery. Dr. Elalayli made the maximum improvement finding because Mr. Kumah left him without "much else to suggest," other than referral to pain management. It remains to be determined whether an employee is entitled to temporary disability benefits when his rejection of offered treatment operates to extend the period of temporary disability.

specifically declined the light-duty offer during that month.

Turning to the remaining period of March through July 2023, the question remains whether CST failed to accommodate Mr. Kumah's restrictions. The issue is clouded because, once he declined the first light-duty offer, he had a responsibility to inform his employer of his willingness to return. However, instead of responding to Ms. Najar or Ms. Fazzitta about the light-duty offer, he never communicated with them again. Instead, he said he repeatedly called someone named Erica at the local office to ask about returning to work.

Once again, the Court has insufficient information to decide this question. No evidence was offered regarding Erica's identity or her position at CST, whether light-duty assignments were part of her job responsibilities, or whether she knew whom to contact or had a responsibility to do so. Without more information, the Court cannot determine whether it was reasonable for Mr. Kumah to continue contacting the local office, when he knew that Ms. Najar and Ms. Fazzitta were responsible for light-duty assignments. Further, Mr. Kumah did not say when he first began asking Erica about returning to work, so the Court cannot determine the period when benefits might be owed.

For these reasons, the Court cannot find at this time that Mr. Kumah is likely to prove entitlement to temporary partial disability benefits between March and July 2023.

**IT IS, THEREFORE, ORDERED** as follows:

1. CST shall pay Mr. Kumah temporary total disability benefits at the agreed rate of $499.30 beginning October 13, 2025, until Dr. Elalayli either releases him to work or assigns maximum medical improvement. All accrued benefits shall be paid within ten days of this order, and future payments shall be paid on time. His attorney is entitled to fees of 20% from this award.

2. Mr. Kumah's request for temporary partial disability benefits is denied at this time.

3. A status hearing will take place on **May 27, 2026, at 9:00 a.m. Central Time.** The parties must call 615-741-2112 to participate.

4. Unless an interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from

the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3).

**ENTERED March 6, 2026.**

_____
**Judge Dale Tipps**
**Court of Workers' Compensation Claims**

### APPENDIX

Exhibits:
1. Collective medical records
2. Rule 72 Declaration of Eric Kumah
3. Dr. Elalayli's response to August 26, 2025 questionnaire
4. Dr. Elalayli's response to October 16, 2025 questionnaire
5. C-42 Choice of Physician form
6. Mr. Kumah's 2024 tax return
7. Mr. Kumah's 2022 tax return
8. C-26 Notice of Change or Termination of Compensation Benefits
9. TTD check stubs
10. Emails between Mr. Kumah and Ms. Frazzitta
11. Emails between Mr. Kumah and Ms. Najar
12. January 23, 2023 letter offering of light duty

## CERTIFICATE OF SERVICE

I certify that a copy of the Order was sent as indicated on March 6, 2026.

| Name | U.S Mail | Email | Service sent to: |
|------|----------|-------|------------------|
| Adam Brock-Dagnan, Employee's Attorney | | X | adambrockdagnan@forthepeople.com |
| Richard Clark, Employer's Attorney | | X | rclark@eraclides.com |

_____
**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov